NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1840-12T2

ADVANCE AT BRANCHBURG II, LLC,

    Plaintiff-Appellant,

v.

TOWNSHIP OF BRANCHBURG BOARD OF
ADJUSTMENT, a municipal public
entity of the State of New Jersey,

    Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| November 1, 2013 |
| APPELLATE DIVISION |

Argued October 9, 2013 — Decided November 1, 2013

Before Judges Grall, Waugh, and Nugent.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1689-11.

Katharine A. Muscalino argued the cause for appellant (Porzio, Bromberg & Newman, P.C., attorneys; Peter J. Wolfson, of counsel; Ms. Muscalino, on the briefs).

Peter E. Henry argued the cause for respondent (Dillon, Bitar & Luther, L.L.C., attorneys; Mr. Henry, of counsel and on the brief).

Mark S. Anderson argued the cause for amicus curiae Township of Branchburg (Woolson Sutphen Anderson, P.C., attorneys; Mr. Anderson and Angela C. Vidal, on the brief).

The opinion of the court was delivered by

WAUGH, J.A.D.

Plaintiff Advance at Branchburg II, LLC (Advance), appeals the Law Division's November 13, 2012 order dismissing its action in lieu of prerogative writs against the Township of Branchburg Board of Adjustment (Board). We affirm.

I.

We discern the following facts and procedural history from the record on appeal.

Advance owns a 31.79-acre property in the Township's I-2 industrial zone. The property consists primarily of cleared land, with woods around the edges, and a wetland and riparian zone along Route 22. In addition to an office building on an adjacent lot, nearby uses include additional office and industrial buildings to the west and across Route 22, single-family homes, including those in the North Branch Hamlet and a mobile-home park, to the north and east, and public park land to the south.

Principal uses permitted in the I-2 zone include "[o]ffice buildings for executive, engineering and administrative purposes," "[s]cientific and research laboratories," "[w]arehousing," "[a]ssembly and fabrication using previously manufactured components," and "[a]gricultural uses." Branchburg, N.J. Ordinance No. 2008-1114 § 3-19. Conditional

uses include "[g]overnmental uses and public utility facilities," as well as principal uses that involve "extraordinarily hazardous substance facilities." Ibid. Housing is not a principal or conditional use in the zone.

In August 2009, Advance filed an application with the Board seeking a use variance, N.J.S.A. 40:55D-70(d)(1), for construction of a multi-family residential development consisting of 292 units, of which fifty-nine would be affordable housing units. The development as proposed consists of twenty-eight buildings, including a mix of apartments, condominiums, and townhouses. Affordable housing units would be integrated with the market-rate units.

The Board took testimony and considered the application during eleven public hearings between July 2010 and July 2011. Advance argued before the Board that inclusion of the fifty-nine affordable units, approximately twenty percent of the total, rendered the entire development an inherently beneficial use for the purposes of the (d)(1) variance. The Board ultimately disagreed and framed its analysis of the application as a "classic, standard" (d)(1) variance, as opposed to one in which the positive criteria were satisfied by the inherently beneficial use. The Board voted to deny Advance's application

at its meeting in July 2011, and memorialized its decision in a resolution adopted in September.

In October, Advance filed a complaint seeking to overturn the Board's denial of the (d)(1) variance. It also asserted claims of discriminatory zoning against the Board and Branchburg Township (Township). In those counts, Advance sought a builder's remedy under the Fair Housing Act, N.J.S.A. 52:27D-301 to -329.19.[1] See Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 512 (2001). In April 2012, the Board and the Township moved for dismissal of the claims seeking the builder's remedy. The motion was granted in April.[2]

Following argument by counsel in October 2012, the trial judge placed an oral decision on the record explaining his reasons for upholding the Board's denial of the (d)(1) variance and dismissing Advance's amended complaint. The judge concluded that granting the (d)(1) variance requested by Advance would amount to awarding a builder's remedy through the variance

---

[1] The parties have argued, and we agree, that the merits of this case do not turn on the status of the Township's compliance with the Fair Housing Act. Nothing in our decision would prevent the Township from deciding to change the zoning in the future to comply with its Fair Housing Act obligations or prevent Advance from seeking to build on its land in the event it is ultimately found to be entitled to a builder's remedy.

[2] Advance filed an amended complaint shortly thereafter, but did not add any additional claims.

process rather than through the mechanism established by the Fair Housing Act. He entered an implementing order on November 13. This appeal followed. We subsequently granted the Township's application to appear as amicus curiae.

## II.

On appeal, Advance argues that (1) its proposed housing development is an inherently beneficial use in the context of a (d)(1) variance application, (2) the requested (d)(1) variance would not constitute zoning by variance or interfere with the Township's ability to plan for affordable housing, and (3) the trial judge erred in failing to find that the positive criteria outweighed the negative criteria even if the proposed development is not inherently beneficial. Before addressing the merits of the case, we outline the law that governs our consideration of this appeal.

## A.

Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division. Bressman v. Gash, 131 N.J. 517, 529 (1993). We defer to a municipal board's factual findings as long as they have an adequate basis in the record. Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58 (1999); Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div.

2004). We are ordinarily not bound by an agency's determination on a question of law, In re Distrib. of Liquid Assets, 168 N.J. 1, 11 (2001), and a municipal board's construction of its own ordinances is reviewed de novo. Nevertheless, we "recognize the board's knowledge of local circumstances and accord deference to its interpretation." Fallone, supra, 369 N.J. Super. at 562; accord DePetro v. Twp. of Wayne Planning Bd., 367 N.J. Super. 161, 174 (App. Div.), certif. denied, 181 N.J. 544 (2004). Like the trial judge, we may not "substitute [our] own judgment for that of the municipal board invested with the power . . . to pass upon the application." Kenwood Assocs. v. Bd. of Adjustment of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976).

Where an applicant's proposal for a variance is denied, the applicant bears "the heavy burden of proving that the evidence presented to the board was so overwhelmingly in favor of the applicant that the board's action can be said to be arbitrary, capricious or unreasonable." Med. Realty Assocs. v. Bd. of Adjustment of Summit, 228 N.J. Super. 226, 233 (App. Div. 1988). This is because "more is to be feared in the way of breakdown of zoning plans from grants than denials of variances." Galdieri v. Bd. of Adjustment of Morris, 165 N.J. Super. 505, 515 (App. Div. 1979).

6

In Kinderkamack Road Associates, LLC v. Mayor & Council of Borough of Oradell, 421 N.J. Super. 8, 12-13 (App. Div. 2011), we reiterated that

> [b]ecause of the legislative preference for municipal land use planning by ordinance rather than variance, use variances [under N.J.S.A. 40:55D-70(d)(1)] may be granted only in exceptional circumstances. E.g., Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95 [(2011)] (acknowledging this preference); Funeral Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 207 (App. Div. 1999) (stating that "only exceptional cases warrant use variances"). Therefore, a municipal board of adjustment may permit "a use or principal structure in a district restricted against such use or principal structure" only where the applicant can demonstrate "special reasons" for the variance. N.J.S.A. 40:55D-70(d)(1). This requirement is known as the "positive criteria." New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adj., 160 N.J. 1, 6 (1999). In addition, a variance application must meet the "negative criteria," ibid., by "showing that [the] variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d).
>
> Regarding the positive criteria, the Court has stated that "'special reasons' takes its definition and meaning from the general purposes of the zoning laws" enumerated at N.J.S.A. 40:55D-2. Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 386 (1990) (citing Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 279 (1967)). In Saddle Brook Realty, LLC v. Township of Saddle Brook Zoning Board of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006), we observed three

7

situations in which "special reasons" may be found:

> (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility; (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone; and (3) where the use would serve the general welfare because the proposed site is particularly suitable for the proposed use.
>
> [(Internal citations and quotation marks omitted).]

. . . .

> All use variance applicants must satisfy the first prong of the negative criteria, which requires proof that "the variance can be granted 'without substantial detriment to the public good.'" [Medici v. BPR Co., 107 N.J. 1, 22 n.12 (1987)]. In addition, any proponent of a use that is not inherently beneficial must satisfy "an enhanced quality of proof" that requires "clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Id. at 21. These findings "must reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." Ibid.

See also Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment (Medical Center), 343 N.J. Super. 177, 200 (App. Div. 2001) (quoting Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998)) ("[I]f the

proposed use is inherently beneficial, the applicant's burden of proof is significantly lessened because 'an inherently beneficial use presumptively satisfies the positive criteria.'").

The Legislature has defined an "inherently beneficial use" as one "which is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare. Such a use includes, but is not limited to, a hospital, school, child care center, group home, or a wind, solar or photovoltaic energy facility or structure." N.J.S.A. 40:55D-4. An inherently beneficial use is evaluated under the standard set forth in Sica v. Board of Adjustment of Township of Wall, 127 N.J. 152, 164-66 (1992), which calls for a balancing of the positive and negative criteria against one another, taking into account the public interest involved, the detriment to the community, and possible conditions the board can apply to mitigate any detriment. The applicant under this more relaxed standard need not satisfy the "enhanced quality of proof" set forth by the Court in Medici, supra, 107 N.J. at 21.

Under Medici, the first inquiry under the negative criteria focuses on the potential effects of the variance on the surrounding properties. "The board of adjustment must evaluate the impact of the proposed use variance upon the adjacent

properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute substantial detriment to the public good." Id. at 22 n.12 (internal quotation marks and citation omitted).

Satisfaction of the second prong of the negative criteria analysis normally requires the applicant also "demonstrate through 'an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance.'" Smart SMR, supra, 152 N.J. at 323 (quoting Medici, supra, 107 N.J. at 21). The enhanced standard articulated in Medici guards against "'arbitrary action and untrammeled administrative discretion.'" Medici, supra, 107 N.J. at 22 (quoting Ward v. Scott, 11 N.J. 117, 126 (1952)). This reflects the policy concern that "'because of their peculiar knowledge of local conditions[, boards of adjustment] must be allowed wide latitude in the exercise of [variance] discretion[,]'" and zoning change is most appropriately accomplished legislatively, rather than through excessive and arbitrary use of variance discretion. Id. at 23 (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)).

B.

We turn first to the issue of whether the housing development with an affordable housing element proposed by

Advance is, as a matter of law, an inherently beneficial use for the purposes of a (d)(1) variance application. That determination will govern whether we apply the Sica or Medici standard to our review of the Board's actions.

Advance relies on our decision in Homes of Hope, Inc. v. Eastampton Township Land Use Planning Board, 409 N.J. Super. 330, 336 (App. Div. 2009) (citing Sica, supra, 127 N.J. at 165), in which we stated that "[a]ffordable housing is an inherently beneficial use." The Board and the Township, however, point to the fact that Homes of Hope involved a proposal to build eight units of affordable, multi-family housing in a residential zone that permitted only single-family homes. They argue that, although a project including only affordable housing units may be inherently beneficial, the addition of affordable units to a proposed development in which most of the proposed units are market-rate housing does not make the entire project inherently beneficial. We agree.

In support of its position, Advance relies on several unreported opinions of this court. They concern cases in which (1) the development at issue was totally composed of affordable units, (2) only the affordable units of a larger residential development required a variance, and (3) the issue was not actually determined by the court. It is well established that

11                                                                    A-1840-12T2

unreported opinions have no general precedential effect and that they may not be cited for that purpose. R. 1:36-3. Although a panel of this court may find the prior unreported opinions of other panels to be persuasive, our review of the specific opinions relied upon by Advance persuades us that they are unhelpful because the factual situations in those cases are not substantially similar to the case before us.

Relying on Medical Center, supra, 343 N.J. Super. at 193, Advance asserts that "the market units are inherently beneficial by virtue of their support of the affordable units." The inherently beneficial use in Medical Center was the operation of an acute care hospital, the issue was

> whether the "back-office" functions of an admittedly inherently beneficial use under the [Municipal Land Use Law], N.J.S.A. 40:55D-70d, (section d), fall within the umbrella of the core use so as [to] preclude the necessity of applying the enhanced burden of proof required for section d relief.

> [Id. at 185.]

In our opinion, we set out a framework for analysis of that issue and remanded to the board.

The gist of Advance's argument is that, because the financial viability of the affordable units proposed for its development depends on its ability to build four times as many market-rate units, those market-rate units are an integral part

of the inherently beneficial use of affordable housing, just as the back-office units were integral to the inherently beneficial operation of the hospital. We do not find that reasoning persuasive.

In Medical Center, we remanded and focused the decision-making process on the function of the relatively small number of back-office units in relation to the core healthcare purposes of the larger hospital. Id. at 205-211. We opined that, although some of the units might appropriately be built in the residentially zoned area adjacent to the hospital because of the integration of their function with the operation of the hospital and the need for close proximity to it, others might not. Id. at 206-09. However, it was the larger beneficial use that potentially permitted the smaller non-inherently beneficial uses in the residential zone. There is nothing in our opinion to suggest that the analysis we established would be applicable where the predominant use is not the inherently beneficial one.

In addition, we do not find the financial benefit upon which Advance relies, even if combined with the social benefit of mixed-income housing, to be comparable to the relationship between the hospital and back-office operations on which we relied in Medical Center. There, the concern was whether the back-office facilities needed to be near the hospital on an

13

ongoing basis so that it could function as a healthcare institution. Here, the issue is whether Advance needs to build a large, predominantly market-based development in the industrial zone to finance its ability to build a smaller number of affordable units in the same location.

A developer's ability to build market-rate units undoubtedly facilitates its building of affordable housing financially, and the mixture of affordable and market-rate housing may well provide benefits to the residents of both. However, we see no basis under our current statutory or decisional law to hold that the inclusion of affordable housing as a relatively small component of a much larger residential development transforms the entire project into an inherently beneficial use for purposes of obtaining a (d)(1) variance under circumstances such as those existing here.

Consequently, the trial judge did not err in declining to find that Advance's project was an inherently beneficial use.

> **[At the direction of the court, the discussion of the remaining issues in the appeal has been omitted from the published version of the opinion.]**

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1840-12T2