**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2467-15T1

NEW CINGULAR WIRELESS
PCS, LLC (AT&T),

    Plaintiff-Respondent,

v.

THE ZONING BOARD OF
ADJUSTMENT OF THE
TOWNSHIP OF CHATHAM,

    Defendant-Appellant.

_____

HAYLEE MESSING, JAY MESSING,
JULIANNA BRENNEN, JAMES BRENNEN,
CATHERINE T. PORTER, JAMES D.
PORTER, JR., SHANNON BRENDLE,
JERRY BRENDLE, MARYBETH
LEITHEAD, ED LEITHEAD, and
GEORGE SARLE,

    Intervenors-Respondents.

_____

Argued May 9, 2017 — Decided August 16, 2017

Before Judges Rothstadt and Mayer.

On appeal from Superior Court of New Jersey,
Law Division, Morris County, Docket No. L-
3095-14.

Stephen H. Shaw argued the cause for appellant.

Judith A. Fairweather argued the cause for respondent (PinilisHalpern, LLP, attorneys; Ms. Fairweather, of counsel and on the brief; Christopher J. Quinn, on the brief).

Robert F. Simon argued the cause for intervenors-respondents (Herold Law, PA, attorneys; Mr. Simon, Robert J. Donaher, and George W. Crimmins, III, on the brief).

PER CURIAM

Plaintiff New Cingular Wireless PCS, LLC filed an application with defendant Zoning Board of Adjustment of the Township of Chatham seeking site plan approval and several variances. Plaintiff required the approval of its application so that it could attach wireless cellular antennas to an existing water tower and install ground equipment that would be housed on a concrete pad. The water tower already had installed on it antennas owned by other cellular providers. According to plaintiff, the additional antennas were required to fill a 2.2-square-mile cellular coverage gap. Defendant denied plaintiff's application, plaintiff filed this action challenging the denial and, after a trial de novo, the Law Division reversed and granted plaintiff's application, finding that defendant's decision was "arbitrary, capricious and unreasonable" because it was unsupported by any credible evidence.

2

On appeal, defendant contends that the court misapplied the applicable standard of review and "substituted its own judgment for that of the board." Intervenors/Objectors agree and also argue that defendant properly denied plaintiff's application because there was only a de minimis lack of cell coverage, the reasons for denial outweighed any benefit of approval, and the court erred in its legal determinations.

We conclude that defendant's and intervenors' arguments are without merit. We affirm substantially for the reasons stated by Judge Stuart A. Minkowitz in his comprehensive, twenty-three page statement of reasons attached to the court's January 7, 2016 order entering judgment in favor of plaintiff.

The facts derived from the record can be summarized as follows. Plaintiff determined that it needed to fill a 2.2-square-mile gap in cellular coverage by installing antennas on an existing 105-foot tall water tower located in a residential zone in an established neighborhood. The water tower is visible throughout the community and already houses other communication antennas. It is on a 100' x 100' landlocked lot.[1] Plaintiff's antennas were to be placed at about four feet from the top of the tower, below the

---

[1] New Jersey American Water Company owns the water tower. The property where the water tower is located requires access over an existing easement on adjacent property.

existing antennas owned by others that extended above the top of the water tower. The attached equipment was to be painted to match the water tank's color, and the ground equipment was to be constructed inside an existing fenced compound, enclosed by a noise-reducing 9.5-feet sound barrier, and obscured by existing landscaping.

Because the project did not comply with Chatham's land use ordinances, plaintiff filed an application with defendant seeking site plan approval, a use variance, a height variance, a conditional use variance, and bulk setback variances. The application was deemed complete, and defendant considered the application at public hearings held over the course of nine evenings.

At the hearings, plaintiff presented the testimony of several experts. Yvan Joseph, an expert in radiofrequency engineering testified that the proposed site was chosen over ten other sites that were considered because it is particularly well suited to provide coverage for the 2.2-square-mile area that was currently without coverage. The other locations were either below the ridgeline or not tall enough to supply the coverage needed to the area. According to Joseph, there would still be "gaps in service" totaling ".9 miles of unserved area" that would have to be covered by another facility.

4

Antonio Gualtieri, P.E., plaintiff's site engineer, testified about anticipated noise levels emanating from the proposed equipment servicing the antenna. He confirmed that cooling fans would create some level of "buzz[ing]" or "hum[ming]." Matthew Murello, an acoustical engineer expert also testified about the noise and stated that it would be below permissible decibel levels. He explained that an approximately ten-feet-tall sound barrier would be part of the installation and would keep any nighttime levels to a minimum.

Mark Tinder, an experienced New Jersey licensed appraiser, testified about whether the project would have an impact on property values. In his opinion, there was no measurable impact on New Jersey properties in relation to cellular sites. However, he conceded that he did not perform any formal appraisals and relied instead on market analysis prepared by realtors because there was no information available as to comparable home prices comparing a pre-antenna construction value to a post-antenna construction one.

Plaintiff's planner, Jim Dowling, P.P., testified as to the lack of other suitable sites for the antennas and the project's lack of any negative impact on the neighboring community. Plaintiff also presented testimony from Ronald Petersen, P.E., an FCC compliance expert who confirmed there was no danger from any

5

radio wave emissions from the antennas and John Pavlovich, P.E., a traffic engineer, who confirmed there were no traffic issues created by the project. Plaintiff also introduced into evidence photo simulations showing the anticipated visual impact of the project.

Defendant's experts also testified at the hearing. Its radiofrequency expert, Dr. Bruce Eisenstein, P.E., agreed that plaintiff had "a gap in coverage" and that this site would fill the coverage gap better than any of the ten other proposed locations. Its own acoustical engineer, Norman Dotti, P.E., confirmed that the proposed sound barrier would in fact maintain any noise from the proposed equipment to within permitted noise levels, preventing neighboring home occupants from hearing the noise.

In addition to expert testimony, a group of objectors attended and voiced their opinions at the public hearings. They disputed that there would be minimal visual impact and that there was a gap in telecommunications coverage. One objector, Nancy Cook, an experienced New Jersey realtor, testified that the project would negatively affect real estate values. She based her opinion on comments made to her by two potential buyers and a price reduction

6

in one home, which she attributed solely to its proximity to a "cell tower."[2]

At the conclusion of the hearings, defendant rejected plaintiff's expert's opinions as to the project's impact on property values, finding Tinder's testimony "was counterintuitive and defied common sense," and that even with the sound barrier a neighboring house would be subjected to "a distinctive electronic hum."[3]  It voted to deny plaintiff's application, reasoning that alternative sites were better suited and any resulting lack in coverage would be "de minimis," property values would go down, and the installation of antennas and equipment would have a negative visual and noise impact.  Defendant adopted a resolution memorializing its denial that stated:

> The Board finds that the requested variances cannot be granted without substantial detriment to the public good and will substantially impair the intent and purpose of the Zone Plan and of the Zoning Ordinance. The aesthetic impacts of the proposed antennae and 9.5 foot high noise barrier surrounding the equipment compound and the devaluation of property in the neighborhood will undermine the residential character of the neighborhood

---

[2]  She was not produced as an expert on behalf of defendant.  She introduced herself and stated that she was a realtor, and she initially stated that she did "appraisals of property," but then corrected herself, stating she was a "realtor [who prepared] market analysis."

[3]  In addition to the board considering the evidence adduced at the hearings, its members also conducted a site inspection.

> and residential zoning. Weighing the positive
> criteria and negative criteria in accordance
> with the balancing test set forth in Sica v.
> Board of Adjustment, 127 N.J. 152 (1992), the
> Board has determined the grant of the proposed
> variances would cause substantial detriment to
> the public good.

In his statement of reasons, Judge Minkowitz applied the appropriate standard of review and the provision of the MLUL, and addressed each of defendant's reasons for denying the application, including visual impact, availability of alternative sites, real estate values, and noise impact, and found no support for any of them. He determined that defendant's reliance upon substantially inferior speculative sites to be unreasonable and the claimed negative visual impact of the antennas and ground equipment to be minimal. Judge Minkowitz explained defendant's rejection of plaintiff's appraiser's opinion to be unreasonable, especially in light of its acceptance of a realtor's opinion based on anecdotal evidence that was not based on any kind of formal study. He quoted from the Court's opinion in Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 334 (1998), and found defendant's reliance on the realtor's testimony to be analogous to the Court's rejection of similar testimony in Smart. Finally, he found defendant's denial based on noise impact to be improper,

8

because its own expert agreed with plaintiff's expert that there would be "no residual noise outside the property line."[4]

"Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Twp. of Branchburg Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013). "In evaluating a challenge to the grant or denial of a variance, the burden is on the challenging party to show that the zoning board's decision was 'arbitrary, capricious, or unreasonable.'" Price v. Himeji, 214 N.J. 263, 284 (2013) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)).

In our review, we defer to a municipal board's determination. "[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Ibid. (alteration in original) (quoting Kramer, supra, 45 N.J. at 296). A zoning board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear

---

[4]    Addressing plaintiff's claim under the Federal Telecommunications Act, 47 U.S.C.A. § 332, the judge found that the same standard applied to defendant's actions and therefore it violated the federal act by being "arbitrary, capricious or unreasonable and unsupported by sufficient evidence in the record." As a result, he did not have to address plaintiff's claim that defendant's denial of its application "had the effect of prohibiting the availability of personal wireless services."

9

abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)). The level of deference given to a board's decision to grant a variance is less than the level of deference given for a denial of a variance. Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 75 (App. Div. 2006) (citing Funeral Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 208 (App. Div. 1999)). "[W]hile we will give substantial deference to [a board's] findings of fact, it is essential that the board's actions be grounded in evidence in the record." Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). See also Advance at Branchburg II, LLC, supra, 433 N.J. Super. at 252 (citations omitted). However, "[w]e are ordinarily not bound by [its] determination on a question of law." Advance at Branchburg II, LLC, supra, 433 N.J. Super. at 252 (citing In re Distrib. of Liquid Assets, 168 N.J. 1, 11 (2001)).

Applying these guiding principles, we find no merit to defendant's contention that Judge Minkowitz applied the wrong standard to his review of defendant's denial or that he substituted his judgment for that of defendant's. Because we agree that defendant's decision was unsupported by the evidence presented, we affirm substantially for the reasons stated by the judge in his

10

thoughtful statement of reasons. We add only the following comments.

Plaintiff's application involved the addition of antennas and the construction of a concrete pad with equipment to an existing water tower that already serviced communication equipment and was located in a residential neighborhood. Contrary to facts in the case law relied upon by defendant and intervenors, plaintiff's application did not call for the construction of a cell tower or monopole, which the Court has previously observed "could impose a . . . substantial adverse impact" that could support a board's denial of an application. New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield, 160 N.J. 1, 16 (1999). See also New York SMSA L.P. v. Bd. of Adjustment of the Twp. of Bernards, 324 N.J. Super. 149, 164 (App. Div.), certif. denied, 162 N.J. 488 (1999).

We conclude that Judge Minkowitz correctly found that there was no support for defendant's determination that plaintiff did not satisfy the negative criteria and prove that the variance could be "granted without substantial detriment to the public good and [that the project would not] substantially impair the intent and purposes of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. Plaintiff's evidence included expert testimony that: (1) there was no danger from radio wave exposure; (2) the project

11

would not create a traffic burden; and (3) the equipment cabinets' noise level, if any, would be below the permitted maximum.[5]

Moreover, as Judge Minkowitz determined, there was a complete lack of credible evidence in the form of expert testimony to support any of defendant's conclusions about the negative criteria. See N.J.S.A. 40:55D-70(d); New Brunswick Cellular Tel. Co., supra, 160 N.J. at 15; Smart, supra, 152 N.J. at 336 ("Proof of an adverse effect on adjacent properties and on the municipal land use plan . . . generally will require qualified expert testimony"). As to defendant's rejection of plaintiff's real estate expert and acceptance of an objector's unsupported opinions, we recognize, as did Judge Minkowitz, that defendant "was free to either accept or reject the testimony of those experts," as long as the decision to do so was "reasonably made." Ocean Cty. Cellular Tel. Co. v. Twp. of Lakewood Bd. of Adjustment, 352 N.J. Super. 514, 537 (App. Div.) (quoting Kramer, supra, 45 N.J. at 288), certif. denied, 175 N.J. 75 (2002). We concur there was no basis for defendant to accept the unqualified realtor's opinion over plaintiff's expert's opinion.

---

[5] The noise level was mitigated by the sound barrier, the installation of which defendant's planner considered "substantial." To the extent the Board relied upon the negative aesthetic impact of the sound barrier, the Board's reliance — as Judge Minkowitz noted — was inappropriate because the sound barrier did not require variance approval.

12

Finally, we address the issues raised by defendant about its findings that the installation for the proposed antennas would only provide de minimis improvement to coverage and that other sites were available to plaintiff. Plaintiff did not have to prove the existence of a "significant" gap in service in order to satisfy the positive criteria.[6] "No case interpreting and applying New Jersey's MLUL has required a wireless communications carrier to prove the existence of a <u>significant</u> gap in coverage in order to satisfy the positive criteria of <u>N.J.S.A.</u> 40:55D-70(d)." <u>New York SMSA, L.P. v. Bd. of Adj. of Weehawken</u>, 370 <u>N.J. Super.</u> 319, 336 (App. Div. 2004) (emphasis in original). Nor does the applicant have to prove that it used the least intrusive means to address the gap in coverage. That standard applies to complaints under the TCA. <u>See</u> <u>New York SMSA Ltd. v. Twp. of Mendham Zoning Bd. of Adjustment</u>, 366 <u>N.J. Super.</u> 141, 149-50, (App. Div.), <u>aff'd. o.b.</u>, 181 <u>N.J.</u> 387 (2004); <u>Ocean Cty. Cellular Tel. Co.</u>, <u>supra</u>, 352 <u>N.J. Super.</u> at 528 n.4, 528-29. However, in conducting the <u>Sica</u> balancing test applicable to the negative criteria, a board is entitled to consider the extent of the need for an additional <u>cell tower</u> — that is, the gap in service — balanced against the

---

[6]    That standard applies to complaints alleging a violation of the TCA. <u>See</u> <u>Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-kus</u>, 197 <u>F.</u>3d 64, 75-76 (3d Cir. 1999).

13

extent of the harm that will be caused by locating the cell tower in an area where its presence contravenes the local zoning ordinance.  See New Brunswick Cellular Tel. Co., supra, 160 N.J. at 14; New York SMSA, L.P., supra, 370 N.J. Super. at 336.

Applying that criteria to the evidence before defendant in this case, it is clear that plaintiff satisfied the positive criteria, N.J.S.A. 40:55D-70(d), and the proposed site was the best choice to provide the needed coverage.  Plaintiff's proposal did not call for the construction of new cell tower or monopole and the other sites considered by defendant to be viable alternatives did not provide any more than sixty-percent of the 2.2 miles of coverage plaintiff was trying to remediate.  We find no evidence that the remaining forty-percent was de minimis.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14