**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2655-16T3

AVALONBAY COMMUNITIES, INC.,

    Plaintiff-Respondent,

v.

TOWNSHIP OF SOUTH BRUNSWICK
ZONING BOARD OF ADJUSTMENT,

    Defendant-Appellant.

_____

            Submitted February 5, 2018 — Decided August 2, 2018

            Before Judges Accurso and O'Connor.

            On appeal from Superior Court of New Jersey,
            Law Division, Middlesex County, Docket No.
            L-6662-15.

            Thomas P. Abode, attorney for appellant.

            Bisgaier Hoff, LLC, attorneys for respondent
            (Robert A. Kasuba and Danielle Novak
            Kinback, on the brief).

PER CURIAM

    Defendant Township of South Brunswick Zoning Board of

Adjustment (Board) appeals from a judgment reversing its

resolution denying plaintiff AvalonBay Communities, Inc.'s application for a use variance.  We reverse.

I

Plaintiff is the owner of vacant property in South Brunswick.  The property, approximately twenty-seven acres, is located in a zoning district that has been designated an age-restricted residential community (ARRC).  The ARRC district permits multi-family residential uses, but the residents in such district must be fifty-five years of age or older.

To the west of the property is Route 1, along which are stores and other commercial entities, and to the east are single-family homes.  The property fronts Major Road, which runs north of the property.  Plaintiff wants to construct non-age restricted rental housing on the property, specifically, plaintiff wishes to build four multi-family apartment buildings and two townhomes, yielding a total of 212 living units.  The majority of the units would have one or two bedrooms, but those units built to meet affordable housing requirements would have three bedrooms.  Plaintiff has proposed that fifteen percent of its units be set aside as affordable housing for low and moderate income individuals.

Plaintiff submitted an application to the Board pursuant to N.J.S.A. 40:55D-70(d)(1) seeking a variance from the requirement

2

the residents of its housing be over the age of fifty-five.[1]
After two days of hearings, the Board denied plaintiff's
application, and subsequently issued a resolution memorializing
its findings. We briefly summarize the pertinent evidence
relevant to the issues on appeal.

Plaintiff's real estate expert, Jeffrey Otteau, testified
the demand for age-restricted housing is very low. He claimed
those fifty-five years of age or older tend to remain in the
homes in which they had been living before turning fifty-five
for as long as possible and, upon retirement, leave New Jersey
to live somewhere more affordable. Only three percent of all
households whose residents are fifty-five and older live in age-
restricted housing.

Otteau further noted that, in central New Jersey, it takes
an age-restricted home an average of six years to sell, whereas
the average length of time to sell a non-age restricted home is
approximately five months. However, the strongest market is the
rental one, where there is a rising demand and a scarcity of
apartments. The vacancy rate for an apartment in New Jersey is
three percent and, in the township, 1.8 percent. Otteau also
testified there is a decline in the number of individuals who

---

[1]  If ultimately successful in obtaining such variance, plaintiff
plans to submit to the Board an application for site plan
approval.

have children; at the time of the hearings in 2015, there were 400 fewer students in the township's schools than there had been in 2011. Therefore, according to Otteau, the demand for smaller homes with only one or two bedrooms is the norm and likely to continue.

With the exception of the affordable housing units in plaintiff's proposed use, which would comprise twenty-nine of the 212 units plaintiff wanted to build, the average rent would be $2300 per month. Otteau stated the occupants of a household would need to earn a total gross annual income of $72,000 to afford such rent.

Plaintiff's expert traffic engineer, Maurice Rached, testified that, with the exception of the morning rush hour, the average motorist would not notice an increase in the "wait time" to reach the intersection of Major Road and Route 1 as a result of the increase in traffic generated by the project. However, during morning rush hour, the wait time to reach the intersection would be 225 seconds, or 3.75 minutes. He did not state what the wait time would be if age-restricted housing were built.

4

Rached also testified about the sight distance to the right and left when one exits the driveway[2] of the subject property. Although the ultimate location of the driveway would affect the sight distance, where the driveway is currently located, there would be a sight distance of 450 feet to the left when only 390 feet is required. However, Rached testified plaintiff was willing to put up a sign instructing drivers they could not turn left out of the driveway if there was a concern about sight distance safety.

Plaintiff's planning expert, Jeromie Lange, testified plaintiff met the positive and negative criteria for a use variance, see N.J.S.A. 40:55D-70(d)(1). As for the positive criteria, Lange opined the proposed use would: (1) promote the general welfare because the use would provide affordable housing; (2) provide an appropriate transition between the commercial uses to the west and the low density single-family homes to the east, making such use particularly suitable for such site; and (3) fulfill a need for non-age restricted housing in the community.

As for the negative criteria, Lange opined the proposed use would not be a substantial detriment to the public good because such use would not remove housing opportunities for seniors,

---

[2] Currently, there is a temporary, gravel driveway at the site.

5

given they could live in the housing plaintiff wants to build. Further, the increase in traffic generated by the proposed use would be minimal.

Lange further testified the proposed use would not substantially impair the intent and purpose of the zone plan or the applicable zoning ordinance because the purpose of the ARRC zone is to provide realistic opportunities for housing. Specifically, as the proposed use would make housing available to everyone, including seniors, the proposed use is not contrary to the zone plan or ordinance.

As stated, immediately following the second day of hearings, the Board voted to reject plaintiff's application for a use variance. In the Board's resolution, it detailed the testimony and, although not evidence, provided the substance of the board members' comments and their questions of witnesses. The Board's ultimate findings were as follows.

Although the Board found plaintiff's planning expert's testimony credible insofar as describing the "layout of the site" and why the proposed use may provide an adequate transition between the commercial uses to the west and the single family homes to the east, the Board found the testimony failed to provide any evidence to support the premise that non-

6

age restricted housing was particularly suitable for the proposed site.

In addition, the Board found plaintiff failed to meet the negative criteria, pointing out the purpose of the ARRC zone, as expressly stated in the applicable zoning ordinance, states:

> The intent and purpose of the ARRC zone is to provide realistic opportunities for construction of low- and moderate-income housing for senior citizens not only to implement the township housing element and fair-share plan which provide residential dwellings to be occupied by persons 55 years of age or older, as further defined and subject to the exceptions in and under the U.S. Fair Housing Act, as amended, such dwellings to be of a type which promotes the efficient delivery of municipal services, access to mass transportation, the provision of recreation facilities by the developer for the sole use by the residents and their guests, and to be designed specifically for adult citizens.
>
> [SOUTH BRUNSWICK CODE OF ORDINANCES, ch. 62, art. IV, div. 3, subdiv. XXXXI, § 62-1721 (2006).]

Because the purpose of the zone is to provide senior housing that meets the standards in the ordinance, the Board concluded plaintiff's proposed use is "an affront" to the intent of the ordinance.  The Board also pointed out the 2001 master plan and a 2007 reexamination report of the master plan stated there is to be age-restricted housing in the township.

7

Plaintiff filed a complaint in lieu of prerogative writs in the Law Division, challenging the Board's resolution. The trial court reversed the Board. In its decision, the court in large part relied upon comments made by Board members before the Board voted upon plaintiff's application and before the resolution was issued. In addition, having listened to a recording of the hearing, the court also relied upon "the manner" in which the members' remarks were made, indicating it was influenced by the tone or inflection of a speaker's voice. The court stated:

> [T]his court finds and concludes that the vote of those members that voted to deny the application was unreasonable. The DVD of the hearing gives this court the opportunity not only to listen to the remarks being made, but also the manner in which they are made.

After listening to the members' remarks and considering the evidence, the court concluded the Board rejected plaintiff's application for reasons related to "site plan issues" and failed to consider whether plaintiff's proposed use satisfied the positive and negative criteria. The court stated:

> It is clear that those members that voted to deny the application did so mainly on site plan issues. The thrust of those members who voted to deny the application were clearly concerned more about site plan issues, than the age-restriction issue, those issues related to [the] impact of ingress and egress [from the development;]

8

> it also included the intensity of the site
> . . . .
>
> There was a clear concern for the number of
> the units proposed and the traffic that
> would be generated as a result.

The court was also critical of the Board for not appreciating that, although the ordinance requires age-restricted housing in the subject zone, plaintiff's proposed housing would not exclude those fifty-five years and older. Therefore, the court reasoned, the proposed use complies with the subject ordinance and, further, provides both affordable and senior citizen housing, which supports the general welfare of the community.

The court found plaintiff satisfied the positive and negative criteria, entitling it to a "D1" use variance. According to the court,

> [t]he application satisfies a number of the
> purposes of zoning as testified to by the
> plaintiff's planner. . . .  The site is
> particularly suited for the use in that
> multifamily units are permitted. . . .
> Relative to the negative criteria, if the
> application were approved and constructed,
> there would be no visible difference between
> it and the age-restricted development.  The
> only recognizable difference would be in the
> age of the occupants.  Because of that
> recognizable difference, there may be more
> automobile trips in and out of the
> development, but that impact will have to be
> justified by the plaintiff at the site plan
> review. . . .

9

> The application is deemed approved, but only to the extent that the age-restriction is lifted.

This appeal ensued.

## II

On appeal, the Board contends the trial court erred when it reversed its resolution denying plaintiff's application for a use variance. The Board argues plaintiff failed to satisfy the positive and negative criteria and, thus, the Board's decision was not arbitrary, capricious or unreasonable.

A zoning board's decision carries a presumption of validity, see Northeast Towers, Inc. v. Zoning Bd. of Borough of W. Paterson, 327 N.J. Super. 476, 493 (App. Div. 2000), is entitled to "substantial deference" from a reviewing court, and may be reversed only if "arbitrary, unreasonable, or capricious." N.Y. SMSA, Ltd. P'ship v. Bd. of Adjust. of Weehawken, 370 N.J. Super. 319, 331 (App. Div. 2004). That deference is greater when a court reviews a denial as opposed to a grant of a variance. Nynex Mobile Comm'ns Co. v. Hazlet Twp. Zoning Bd. of Adjust., 276 N.J. Super. 598, 609 (App. Div. 1994). In addition, zoning boards, "because of their peculiar knowledge of local conditions must be allowed wide latitude in the exercise of delegated discretion." Kramer v. Bd. of Adjust., 45 N.J. 268, 296 (1965).

10

Because the trial court relied in part upon comments made by individual Board members during the hearing to arrive at its conclusions, we cite the following from N.Y. SMSA, Ltd. P'ship v. Bd. of Adjustment of Tp. of Weehawken, which instructs that:

> remarks [made by Board members] at best reflect the beliefs of the speaker and cannot be assumed to represent the findings of an entire Board. Moreover, because such remarks represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact. It is the resolution, and not board members' deliberations, that provides the statutorily required findings of fact and conclusions.
>
> [N.Y. SMSA, 370 N.J. Super. at 333-34 (citing Scully-Bozarth Post #1817 v. Planning Bd. of Burlington, 362 N.J. Super. 296, 311-12 (App. Div. 2003)).]

An applicant seeking a use variance must demonstrate "special reasons" commonly referred to as the positive criteria why the variance sought should be granted. N.J.S.A. 40:55D-70(d)(1). "Special reasons" are those that promote the general purposes of zoning enumerated in N.J.S.A. 40:55D-2, see Burbridge v. Mine Hill, 117 N.J. 376, 386 (1990) (citing Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 276 (1967)), and fall into one of three categories:

> (1) [W]here the proposed use inherently serves the public good, such as a school, hospital or public housing facility; (2) where the property owner would suffer "undue

hardship" if compelled to use the property in conformity with the permitted uses in the zone; and (3) where the use would serve the general welfare because the proposed site is particularly suitable for the proposed use.

[Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjust., 388 N.J. Super. 67, 76 (App. Div. 2006)(citations omitted)(emphasis added).]

We note here the first special reason does not apply in this matter. It is settled law that there is "no basis under our current statutory or decisional law to hold that the inclusion of affordable housing as a relatively small component of a much larger residential development transforms the entire project into an inherently beneficial use for purposes of obtaining a (d)(1) variance. . . ." Advance at Branchburg II, LLC v. Branchburg Tp. Bd. of Adjustment, 433 N.J. Super. 247, 258 (App. Div. 2013). In Advance, we rejected the plaintiff-developer's argument that setting aside twenty percent of its units as affordable housing rendered the entire development an inherently beneficial use for the purposes of a (d)(1) variance. Ibid.

As for the second special reason, for the purposes of this matter, it suffices to say that "[s]pecial circumstances are not established by a showing that the proposed use would be more profitable to the owner than the permitted uses." Charlie Brown

12

of Chatham, Inc. v. Bd. of Adjustment, 202 N.J. Super. 312, 329 (App. Div. 1985)(citing Shell Oil Co. v. Zoning Bd. of Adj. Shrewsbury, 127 N.J. Super. 60, 66. (1973)).

As clarified by our Supreme Court in Price v. Himeji, LLC, 214 N.J. 263, 293 (2013), the third special reason requires a finding "the property is particularly suited for the proposed purpose, in the sense that [the property] is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone."

An applicant for a use variance must also satisfy the "negative criteria." Specifically, an applicant must show the variance "can be granted without substantial detriment to the public good" and "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Price, 214 N.J. at 286 (quoting N.J.S.A. 40:55D-70). As explained by the Court in Price:

> The showing required to satisfy the first of
> the negative criteria focuses on the effect
> that granting the variance would have on the
> surrounding properties. Medici v. BPR Co.,
> 107 N.J. 1, 22 n. 12 (1987). The proof
> required for the second of the negative
> criteria must reconcile the grant of the
> variance for the specific project at the
> designated site with the municipality's
> contrary determination about the permitted
> uses as expressed through its zoning
> ordinance." Id. at 21.

13

[*Ibid.*]

Applying these standards, we are satisfied the trial court erred when it reversed the Board's resolution. The record supports the Board's finding that plaintiff failed to establish the positive and negative criteria for the issuance of the use variance; namely, that special reasons exist for the variance and that the variance can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance.

Specifically, as for the positive criteria, plaintiff argued its "special reasons" were that fifteen percent of its proposed use was going to be affordable housing; the proposed use would act as a transitional one between the uses to the west and to the east; and there is a need for non-age restricted housing in the community.

As previously noted, the first special reason does not apply because the proposed use does not inherently serve the public good. As for the second special reason, although it provided evidence the demand for senior housing is low and the demand for non-age restricted rental housing is high, plaintiff did not claim it would suffer an undue hardship if compelled to use the property in conformity with the permitted uses in the zone. The special reasons plaintiff proffered were as stated

14

above.  Even if we were to surmise plaintiff implicitly asserted it would suffer an undue hardship, plaintiff failed to meet the third special reason.

Specifically, plaintiff failed to show the proposed site is especially well-suited for the site.  See id. at 293.  Plaintiff was required to prove that, even if there were a need for its proposed use, "the general welfare is served because the use is peculiarly fitted to the particular location for which the variance is sought."  Cox, New Jersey Zoning and Land Use Administration, § 32-4.1 (2018) (emphasis in the original) (citing Fobe Associates v. Mayor and Council of Demarest, 74 N.J. 519 (1977)).  Further, the fact the proposed housing would act as a transition between the uses to the east and to the west of the site does not suffice, because the permitted use would achieve the same result.  See Degnan v. Monetti, 210 N.J. Super. 174, 185 (App. Div. 1986).

As for the first prong of the negative criteria, there was little evidence about the effect the variance would have on the surrounding properties.  But even if the proposed use would not cause any substantial detriment to such properties, plaintiff failed to satisfy the second prong of the negative criteria.

The master plan provides that one of the goals of the "Housing Plan Element" is to "[p]rovide for a variety of housing

15

choices through the implementation of South Brunswick's affordable housing obligation as follows: . . . . Encourage adequate affordable housing for low and moderate income families (including senior citizens) in conformance with the approved housing plan."

The subject zoning ordinance, cited above, explicitly states the intent and purpose of the ARRC district is to provide "realistic opportunities for construction of low- and moderate-income housing for senior citizens," which are to be of a type that promotes "the efficient delivery of municipal services, access to mass transportation, the provision of recreation facilities by the developer for the sole use by the residents and their guests, and to be designed specifically for adult citizens." SOUTH BRUNSWICK CODE OF ORDINANCES, ch. 62, art. IV, div. 3, subdiv. XXXXI, § 62-1721 (2006).

In light of the pertinent language in the master plan, which makes clear the township seeks to provide affordable housing for low and moderate income senior citizens, and the language in the subject zoning ordinance, which states the permitted uses are limited to age-restricted housing for seniors, plaintiff clearly failed to carry its burden of showing the proposed use will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

16

While fifteen percent of plaintiff's proposed housing would be set aside for affordable housing and thus eligible seniors could live in such housing, eighty-five percent of the housing would not be affordable. The proposed use is predominantly inconsistent with what the master plan and zoning ordinance envision for this particular district - senior housing for low and moderate income seniors. In addition, plaintiff failed to proffer evidence that any of its proposed housing would provide the amenities for seniors specifically mandated in the ordinance, such as access to mass transportation or recreation facilities designed specifically for adult citizens.

As for the trial court's findings, it relied in part upon the comments of Board members to arrive at its conclusions, none of which was evidence. The fact a Board member commented upon or asked about a site plan issue or some other irrelevant aspect of plaintiff's application cannot be used as a reason to reverse — or affirm, for that matter — the Board's resolution. In addition, for the reasons set forth above, the trial court did not fully recognize the extent to which plaintiff failed to fulfill the applicable positive and negative criteria.

Finally, the trial court was placated by the fact the proposed use would be essentially the same as the use required by the zoning ordinance, specifically, housing, the only

17

difference being the residents would be of all ages, and that plaintiff was at least providing some affordable housing. However, as noted, the master plan and the zoning ordinance clearly seek housing in such zone for low and moderate income seniors in this district. Further, there was no evidence plaintiff's housing would have the amenities the ordinance requires for seniors.

Finally, plaintiff is not without a remedy. Plaintiff contends the only kind of housing permitted in the subject zone is no longer in demand in the township, not just in this particular zone. If a party considers a zoning ordinance outdated or arbitrary, it may go before a municipality's governing body and seek an amendment to the zoning ordinance. In fact, if, as plaintiff alleges here, the alleged deficiency is common to all or other areas of the municipality, the appropriate remedy is to seek relief from the governing body. See Brandon v. Bd. of Comm'rs, 124 N.J.L. 135, 150 (Sup. Ct. 1940)(observing if the difficulty with a zoning ordinance "is common to lands in the vicinity, by reason of arbitrary zoning, and is therefore of general rather than particular application, the remedy lies with the local legislative body or in the judicial process.").

18

Accordingly, because the Board's decision was not arbitrary, capricious or unreasonable, the judgment entered by the trial court is reversed.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION