290 N.J. Super. 350 (1996)
675 A.2d 1151
THE CHILDREN'S INSTITUTE, PLAINTIFF-RESPONDENT,
v.
VERONA TOWNSHIP BOARD OF ADJUSTMENT, DEFENDANT-APPELLANT, AND AFTERGLOW ASSOCIATION OF VERONA, INTERVENOR, AND VERONA TOWNSHIP COUNSEL, VERONA TOWNSHIP, MONTCLAIR TOWNSHIP PLANNING BOARD, MONTCLAIR TOWNSHIP COUNCIL, MONTCLAIR TOWNSHIP, AND JAMES BISHOP, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1996.
Decided May 10, 1996.
*353 Before Judges BAIME, VILLANUEVA, and KIMMELMAN.
Dennis J. Drasco, argued the cause for appellant (Lum, Danzis, Drasco, Positan & Kleinberg, attorneys; Mr. Drasco, of counsel and on the brief; Kevin J. O'Connor, on the brief).
Robert Novack, argued the cause for respondent (Budd Larner Gross Rosenbaum Greenberg & Sade, attorneys; Mr. Novack and Mary L. Moore, on the brief).
Paul Jemas, argued the cause for intervenor (Jemas, Nardone & Burnside, attorneys; Mr. Jemas and Russell S. Burnside, on the brief).
The opinion of the Court was delivered by KIMMELMAN, J.A.D. (temporarily assigned).
*354 Defendant Verona Board of Adjustment (hereinafter "Board") appeals from a judgment of the Law Division reversing the Board's denial of plaintiff The Children's Institute's application for a use variance to convert a 44,000-square-foot non-conforming office building into a day school for approximately 130 handicapped children.
Presently, plaintiff operates a day school for handicapped children in Livingston on property leased from the Livingston Board of Education. Hoffmann-LaRoche has donated to plaintiff property in Verona consisting of a 44,000-square-foot office building together with five accessory parking lots, in all, a seven-acre site designated as 1 Sunset Avenue. A small portion of the property, two parking lots, is located in Montclair. The office building is a non-conforming use and has been vacant for the past four years. The office building is presently located in an R-2 single-family residential zone, wherein schools are not a permitted use. When built, the office building complied with the zone's former designation as C-2 commercial. Plaintiff seeks to relocate its school from Livingston to the office building.
In denying plaintiff's variance application, the Board acknowledged that plaintiff's proposed use is an inherently beneficial use, but found that the impact of the proposed use on traffic would create a substantial detriment to the neighborhood and to the public good. The Board found in its resolution that "the total impact of the increased movement of vehicular traffic in the neighborhood would have a substantial negative impact."
The trial court reversed the Board and granted the variance subject to a remand to the Board limited solely to the imposition of reasonable conditions regarding traffic dispersal as it enters and exits the facility. The Board appeals, contending that the trial court impermissibly substituted its own judgment for that of the Board and, further, that the Board's denial was supported by the evidence and was not arbitrary, capricious, or unreasonable. We disagree and affirm the trial court.
*355 An applicant for a variance must prove both positive criteria and negative criteria, as required by N.J.S.A. 40:55D-70d. Sica v. Board of Adjustment of Wall, 127 N.J. 152, 603 A.2d 30 (1992), succinctly sets forth the applicant's obligation as follows:
Under the positive criteria, the applicant must establish "special reasons" for the grant of the variance. The negative criteria require proof that the variance "can be granted without substantial detriment to the public good" and that it "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance."
[Id. at 156, 603 A.2d 30 (quoting N.J.S.A. 40:55D-70d).]
Should the proposed use be deemed to be inherently beneficial, the applicant, in turn, is regarded as having satisfied the positive criteria, meaning "special reasons" required by N.J.S.A. 40:55D-70d. Id. at 159-60, 603 A.2d 30. Here, plaintiff operates a non-profit school serving the special educational and therapeutic needs of emotionally disturbed, autistic, and handicapped preschool children. The school draws its student body from approximately forty communities throughout Essex County and northern New Jersey. It has an average daily enrollment of 130 handicapped students. We must conclude, as did the Board, that the proposed use as a school for handicapped children is inherently beneficial.
A board of adjustment, having concluded that a proposed use is inherently beneficial, must then determine whether the use variance satisfies the negative criteria. As noted above, this calls for a board to ascertain whether the grant of the variance may be made "without substantial detriment to the public good" and without "substantially impair[ing] the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70d; Sica, supra, 127 N.J. at 156, 603 A.2d 30. Of course, a non-residential use in a residential zone will produce some adverse effect, but a minimal adverse impact may not outweigh the positive criteria resulting from an inherently beneficial use. Sica, supra, 127 N.J. at 165, 603 A.2d 30. The Supreme Court in Sica established a four-step test to be used by local boards of adjustment when *356 balancing the positive and negative criteria. Id. at 165-66, 603 A.2d 30.
First, the local board should identify the public interest at stake. Id. at 165, 603 A.2d 30. Obviously, some inherently beneficial uses are more compelling than others. Ibid. In our view, a non-profit school to serve the special educational and therapeutic needs of handicapped children will be near the top of the scale.
Second, the local board "should identify the detrimental effect that will ensue from the grant of the variance." Id. at 166, 603 A.2d 30. An increase in traffic "will usually attend any non-residential use in a residential zone," but "[w]hen minimal, such an effect need not outweigh an inherently beneficial use that satisfies the positive criteria." Ibid.
Third, "the local board may reduce the detrimental effect," in some situations, "by imposing reasonable conditions on the use." Ibid.
Fourth, the local board "should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." Ibid.
Sica then recites the settled law governing the judicial consideration of decisions of local boards as follows:
Review of the decision of a board of adjustment denying such a variance because of the failure to satisfy the negative criteria, like the review of decisions of local land use agencies generally, begins with the recognition that the board's decision is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable. See Rowatti v. Gonchar, 101 N.J. 46, 51-52, 500 A.2d 381 (1985); Kramer v. Board of Adjustment, 45 N.J. 268, 296, 212 A.2d 153 (1965); Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954). Underlying the presumption is the recognition that such boards possess special knowledge of local conditions and must be accorded wide latitude in the exercise of their discretion. Kramer, supra, 45 N.J. at 296-97, 212 A.2d 153.
[Id. at 166-67, 603 A.2d 30.]
*357 We note, as did Judge Yanoff in the trial court, that the Board compared the traffic flow expected to be generated by the school vans and personnel attendant to the proposed use with the complete absence of traffic in the neighborhood due to the non-use of the office building for the past four years. To be sure, while the residents of Sunset Avenue and adjacent streets have become accustomed to the diminished flow of traffic in their neighborhood occasioned by the temporary vacancy of the office building, they have no right to expect that such inactivity has become a permanent feature. The 44,000-square-foot office building is a valid non-conforming use. See Consent Judgment entered December 22, 1995. It has a legal life of its own; it is a valuable property right. Scavone v. Mayor & Council of Totowa, 49 N.J. Super. 423, 428, 140 A.2d 238 (App.Div. 1958). Its temporary non-use does not constitute an abandonment, Borough of Saddle River v. Bobinski, 108 N.J. Super. 6, 17, 259 A.2d 727 (Ch.Div. 1969), and, as Judge Yanoff observed, the property cannot be zoned into "inutility." The attributes resulting from its lawful, non-conforming use as an office building may not be ignored by a board of adjustment when weighing the positive and negative criteria under the statute to determine whether, on balance, the grant of the variance would or would not cause a substantial detriment to the public good.
In operation as a lawful commercial use, the office building would have an occupancy of 150 to 220 employees, although the building could accommodate as many as 900 employees and would be in operation five days per week throughout the entire year. On the other hand, the proposed school use would be for approximately 180 school days during the year with a summer program limited to only twenty days. The hours of plaintiff's school day would be shorter than the typical 9:00 a.m. to 5:00 p.m. schedule which would be expected with an office building. At most, the increase in traffic that might be expected from plaintiff's proposed use would be de minimus when compared to the traffic that would emanate from the lawful commercial use of the office building on the site. Plaintiff proposes to channel all school traffic *358 from Bloomfield Avenue into the property at the foot of Sunset Avenue and to exit the same way so that no school traffic would pass by any of the homes in the Afterglow and Sunset Avenues area.
Unfortunately, the Board merely paid lip service to being bound by the principles set forth in Sica, but the members went their own way in deciding this matter. For example, one member said that the Board had decided that it was "not going to go into the inherently beneficial use because we are told that that is not a consideration." Another member addressing the traffic issue said that the Board members "don't care if it is two cars or two hundred cars."
By reason of the foregoing, we are satisfied that the negative impact expected from the proposed use, if detrimental at all, would not rise to the statutory degree of being a "substantial detriment to the public good." N.J.S.A. 40:55D-70d. The Board's denial of the variance application was certainly arbitrary, capricious, and unreasonable. Judge Yanoff correctly followed the "third" step of the Sica test and remanded the matter to the Board to determine the imposition of reasonable conditions regarding traffic as it enters and exits the proposed facility.
Finally, we address the propriety of the trial court's awarding to plaintiff, as part of the taxed costs, the costs of preparing the transcripts of the hearing before the Board. Rule 4:42-8(a) provides: "Unless otherwise provided by law, these rules or court order, costs shall be allowed as of course to the prevailing party."
Production of the transcripts of the hearing before the Board was a necessary cost incurred by plaintiff in order to properly perfect its action in lieu of prerogative writs before the trial court. The trial court did not abuse its discretion in awarding such costs to plaintiff as the prevailing party. Huber v. Zoning Bd. of Adjustment of Howell, 124 N.J. Super. 26, 28-29, 304 A.2d 578 (Law Div. 1973).
*359 Other issues raised by the Board on this appeal, such as the trial court's unannounced viewing of the site in question, are clearly without merit. R. 2:11-3(e)(1)(A). The trial court based its decision on the record before it and not upon facts gleaned from a personal inspection. See Lazovitz v. Board of Adjustment, Berkeley Heights, 213 N.J. Super. 376, 382, 517 A.2d 486 (App.Div. 1986).
In sum, we affirm substantially for the reasons expressed by Judge Yanoff in his oral decision rendered January 4, 1996.