735 A.2d 1166 (1999)
324 N.J. Super. 412
RANDOLPH TOWN CENTER ASSOCIATES, L.P., Plaintiff-Appellant,
v.
TOWNSHIP OF RANDOLPH, Board of Adjustment, and Randolph Joint Venture, Defendants-Respondents, and
Naomi Silverberg, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1999.
Decided June 11, 1999.
Laurence Berger, for plaintiff-appellant (Berger & Bornstein, attorneys; Eric H. Berger, on the brief).
Kenneth H. Ginsberg, for defendant-respondent Randolph Township Board of Adjustment (Mr. Ginsberg, of counsel and on the brief; Edward Solensky, Jr., on the brief).
Richard D. McLaughlin, for defendant-respondent Randolph Joint Venture (Mr. McLaughlin, on the brief).
Before Judges A.A. RODRÍGUEZ, BILDER and LEFELT.
The opinion of the court was delivered by LEFELT, J.A.D., Temporarily Assigned.
Randolph Joint Venture (Joint Venture) applied for a floor area ratio (FAR) variance, N.J.S.A. 40:55D-70 (d)(4); several (c) variances, N.J.S.A. 40:55D-70(c); and design waivers and site plan approval for the construction of a supermarket and bank on a 7.59 acre tract located in a commercial zone in Randolph Township, where both banks and supermarkets were permitted uses. Randolph Town Center Associates (Associates), a potential competitor *1167 of Joint Venture, owning property about ¼ mile East of the proposed tract, opposed Joint Venture's application. Following numerous hearings, which began on April 25, 1996 and extended over one year, the Randolph Township Board of Adjustment on September 11, 1997 adopted a detailed resolution approving Joint Venture's application. Associates then filed a complaint in lieu of prerogative writs which came before Judge Stanton who eventually issued a final judgment dismissing the complaint and upholding all of the Board's decisions granting the various variances, waivers and site plan. Associates appeals from Judge Stanton's judgment and claims the Board made various errors in approving the development. We reject all of Associates' claims and affirm.
We believe that of all the arguments Associates advanced, only its objection to the grant of the floor area ratio (FAR) variance requires additional discussion. Associates contended that to satisfy the "special reasons" requirement, Joint Venture under Medici v. BPR Co., 107 N.J. 1, 526 A.2d 109 (1987), had to prove that the property was particularly suited to a higher than permitted FAR. We, like Judge Stanton, disagree with that contention. Accordingly we detail only those facts pertinent to the issue on which we write.
The property consists of a trapezoid-shaped parcel located at the Northeast corner of Sussex Turnpike and Millbrook Avenue in Randolph Township. The proposed development, which was approved by the Board, was located in a B-1, Neighborhood Business District zone and was to contain a bank and a Grand Union supermarket. Under the Town Zoning Ordinance, banks and supermarkets were permitted uses in the B-1 zone. While the subject property was close to other properties located in zones which permit floor area ratios of .18 to .25, the B-1 zone does not permit a FAR in excess of .13.
Under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129, FAR is calculated by taking the sum of the area of all floors of buildings or structures in square feet and dividing by the total area of the site in square feet. N.J.S.A. 40:55D-4. Thus, the FAR regulates the square feet of floors and not height. Therefore, under the FAR standard, a building could be built either on one level or multi-levels and contain the same number of square feet for FAR purposes. Essentially, the FAR measures the percentage of total floor area to the entire site.
The proposed Grand Union supermarket would have a floor area, as defined by State standards, of 45,281 square feet. The proposed bank contains an area of 2,700 square feet. According to the MLUL, N.J.S.A. 40:55D-4, the development would have a .142 FAR, and be .012 in excess of the Ordinance. Even if the bank were removed from the development, the supermarket alone would still require a FAR variance.
Under the Township Ordinance, which excludes floor area for stairwells, elevator shafts, mechanical rooms, janitor rooms and loading areas in calculating FAR, the development had a .133 FAR, and was .003 over the Ordinance FAR.
FAR restrictions, like restrictions on density, bulk or building size, are all commonly employed techniques for limiting the intensity of use of property. Commercial Realty and Resources Corp. v. First Atlantic Properties, 122 N.J. 546, 561, 585 A.2d 928 (1991). FAR standards are generally utilized to regulate commercial uses, whereas density restrictions, which limit the number of dwelling units per acre, achieve the same effect for residential development. William M. Cox, New Jersey Zoning and Land Use Administration Sec. 7-7.1 at 181 (1999).
Variances from either FAR restrictions or limits on density are governed by subsection (d) of N.J.S.A. 40:55D-70 because they can pose a greater threat to the zone plan and public good than other dimensional controls, which are regulated by *1168 subsection (c). Commercial Realty, supra, 122 N.J. at 562-63, 585 A.2d 928.
The application for a FAR variance, therefore, is governed by N.J.S.A. 40:55D-70(d)(4), which authorizes a variance for "an increase in the permitted floor area ratio as defined [by N.J.S.A. 40:55D-4]" upon a showing of special reasons (the positive requirement) and provided that the variance can be granted "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and the zoning ordinance" (the negative requirement).
We believe that with regard to establishing "special reasons" for a FAR variance, Coventry Square v. Westwood Zoning Bd. of Adj., 138 N.J. 285, 650 A.2d 340 (1994) and not Medici controls.
Though Coventry Square dealt with a conditional use variance under N.J.S.A. 40:55D-70(d)(3), the Supreme Court held that it would be "plainly inappropriate" to apply the variance standard for a prohibited use to what was essentially a permitted use, which does not comply with one or more of the conditions imposed by the ordinance. Coventry Square, supra, 138 N.J. at 297, 650 A.2d 340.
The Court pointed out that with a use variance, the applicant must attempt to justify permission for a use that has been prohibited. But with a conditional use variance, the applicant need only justify "continued permission for a use notwithstanding a deviation from one or more conditions of the ordinance." Id. at 298, 650 A.2d 340.
The Court further noted that the "course of judicial development of variance standards reflects the need for criteria that are appropriate for specific types of variances," Id. at 298, 650 A.2d 340, and held that the special reasons standard for a conditional use variance "should be relevant to the nature of the deviation from the ordinance." Id. at 297-98, 650 A.2d 340. Under this standard, a board could find special reasons, "if it is persuaded that the non-compliance with conditions does not affect the suitability of the site for the conditional use." Id. at 298-99, 650 A.2d 340.
Because a (d)4 FAR variance also deals with uses that are permitted in the zone and thus is different from variances for excluded uses, we hold pursuant to Coventry Square that an applicant for a FAR (d)(4) variance need not show that the site is particularly suited for more intensive development. To impose such a stringent burden would mean that a FAR variance applicant would have perhaps as difficult a burden to meet as an applicant for a prohibited use variance. To require such a burden would be inconsistent with the principle that (d) variances for permitted uses need not meet the "stringent special reasons standards for a commercial-use variance." Coventry Square, supra, 138 N.J. at 287, 650 A.2d 340.
Like a conditional use variance applicant, FAR variance applicants must show that the site will accommodate the problems associated with a proposed use with larger floor area than permitted by the ordinance.
In this case, the Board made detailed factual findings justifying the positive and negative statutory requirements. The necessity for specific findings was designed "to insure that the exercise of discretion by boards of adjustment faithfully reflects the statutory standards ordained by the legislature." Medici, supra, 107 N.J. at 23, 526 A.2d 109. This requirement is also part of our basic administrative law. All administrative agencies must "articulate the standards and principles that govern their discretionary decisions in as much details as possible." Van Holten Group v. Elizabethtown Water Co., 121 N.J. 48, 67, 577 A.2d 829 (1990).
Among other clear and specific findings that were well grounded in the large record, the Board found that there was a need for a supermarket in this general location. The Board recognized that *1169 the trend in the supermarket industry is toward larger markets with a wider variety of goods being offered in addition to the traditional food market fare. The Board also believed that the development of the subject property would be an important positive step in anchoring the Town Center area. In fact, the master plan contemplates a supermarket in the immediate area.
While, Joint Venture acknowledged that the proposed development will not improve traffic congestion, the Board noted that the bank and supermarket are permitted uses. Even if a market were built which did not require a FAR variance, there would still be more traffic in this area resulting from the development. Thus, the Board believed that the appropriate comparison was between a bank and a supermarket with a combined FAR that complied with that required by law, and the increased floor area represented by the instant application. Children's Inst. v. Verona Tp. Bd. of Adj., 290 N.J.Super. 350, 357, 675 A.2d 1151 (App.Div.1996). The Board found that the difference was minimal, and that the number of additional trips generated during peak hours "is not of such a magnitude as to warrant a denial of the variance."
The Board also found that the project's FAR is well under the FAR permitted in adjacent zones and virtually complies with the .13 FAR Ordinance requirement.
Accordingly, in making these findings, the Board correctly found special reasons and determined that the variance could be granted "without substantial detriment to the public good." Furthermore, the Board also rightly determined that there was no substantial impairment to the zone plan and ordinance.
Therefore, we conclude that the Board action in approving the FAR variance complied with applicable law and had ample support in the record. It is not our function to disapprove a Board's determination, even when a contrary result might also have been reached. Kramer v. Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965); Pagano v. Zoning Bd. of Adj., 257 N.J.Super. 382, 389, 608 A.2d 469 (Law Div.1992). We must respect the Board's proper exercise of its authorized discretion.
We have also carefully reviewed the record, in light of the applicable law, pertaining to the following challenges to the Board in approving the site plan: (a) the Board lacked jurisdiction to grant site plan approval; (b) before approval, Joint Venture required wetlands and sewer permits; (c) the project violated the Master Plan and should not have been approved; (d) Joint Venture failed to seek all necessary design waivers and should not have been granted any design waivers; and (e) the plan failed to address noise and traffic congestion. After our review of the record and the applicable law, we are satisfied that all of these alleged errors urged by Associates are without merit. R. 2:11-3(e)(1)(D) and (E).
In addition, we have similarly reviewed the following Associates' arguments: (a) the (c) variance permitting two buildings on one lot should not have been granted; (b) the steep slope and other (c) variances should not have been granted; (c) the Notice provided by Joint Venture was inadequate; (d) the Board violated Associates' due process rights; (e) the amendment of the zoning ordinance required re-submission of the proposal; and (f) the design waivers failed to garner the necessary number of votes. We affirm Judge Stanton's upholding of the Board's resolution of each of these arguments substantially for the reasons given by Judge Stanton in his thoughtful oral opinions of May 1, 1998 and July 2, 1998 and his letter of July 3, 1998.
Affirmed.