NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1102-22

SACKMAN ENTERPRISES, INC.,

    Plaintiff-Appellant,

v.

MAYOR and COUNCIL OF THE
BOROUGH OF BELMAR,

    Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

February 20, 2024

APPELLATE DIVISION

Submitted January 16, 2024 – Decided February 20, 2024

Before Judges Mawla, Marczyk, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1530-22.

Fox Rothschild, LLP, attorneys for appellant (Andrew Jeffrey Karas, on the briefs).

Dasti McGuckin McNichols Connors Anthony & Buckley, attorneys for respondent (Patrick F. Varga, of counsel and on the brief).

The opinion of the court was delivered by

CHASE, J.S.C. (temporarily assigned)

In this case we are asked to answer three questions:  first, whether a governmental body, serving as a Redevelopment Agency, is obligated to apply

electric vehicle ("EV") parking credits, as required under N.J.S.A. 40:55D-66.20 ("the EV statute"), when determining a concept plan's consistency with a redevelopment plan adopted pursuant to the Local Redevelopment and Housing Law ("LRHL") (N.J.S.A. 40A:12A-1 to -89); second, under section (f) of the EV statute, when applying EV credits, how the credits are to be rounded up; and last, whether a rounded-up EV credit may reduce the total required parking by more than the ten percent limit set forth under section (e) of the EV statute.

We conclude that EV credits are to be applied when determining a concept plan's consistency with a redevelopment plan. Otherwise, a plan that was confirmed as consistent by the Borough would not be the same as the one to be potentially approved at time of preliminary site plan approval. We also conclude that when applying EV credits to the total number of calculated spaces and that number includes any decimal, based on the plain language of the statute, the calculation must be rounded up to the next whole parking spot. However, also based on the plain language of the statute, we reject defendant's contention that a rounded-up EV credit can reduce the total required parking by more than the ten percent limit set forth under section (e) of the EV statute, which is more specific than section (f) and therefore controls.

Applying these principles, we affirm the Law Division's denial of plaintiff's motion for summary judgment and grant of the defendant's cross-motion for summary judgment.

I.

Sackman is a corporation organized and operating in New York and is the contract purchaser of a 30,000 square-foot property located within the Seaport Village Redevelopment Area. The property is subject to the Seaport Redevelopment Plan ("Redevelopment Plan"), which was adopted in accordance with the LRHL. The Redevelopment Plan, created in 2003 and most recently updated in 2016, intends to develop a waterfront neighborhood into a downtown space consisting of mixed-use properties with restaurants and storefronts, with various goods and services within walking distance of commuter transit.

To be appointed as the redeveloper of the property, Sackman submitted concept plans to the Borough for a determination of their consistency with the Redevelopment Plan. Sackman's plans proposed a mixed-use project consisting of street-level commercial units and residential and office space above. Between September 2021 and March 2022, Sackman submitted several versions of the concept plan. The Borough denied all submissions.

In early September 2021, Sackman submitted its initial concept plan, which the Borough rejected for insufficient reserved on-site parking and for

failing to satisfy the floor area ratio requirement ("FAR").[1] The Redevelopment Plan requires land use applications and concept plans to comply with a 1.5 FAR; however, if the plans fully satisfy the on-site parking requirements by accounting for two parking spaces per residential unit, the FAR requirement is waived. That is, prospective redevelopers must either provide sufficient enclosed on-site parking reserved for residents at the two-to-one ratio or satisfy the FAR requirement.

At the end of September, Sackman submitted a revised two-option concept plan, which the Borough rejected for failing to meet the FAR requirement or alternatively the on-site parking requirement. In November, Sackman submitted another revised two-option concept plan, which reduced the number of residential units and increased on-site parking while also including special parking spaces for EVs. Because a single parking space with EV equipment counts as two parking spaces under N.J.S.A. 40:55D-66.20(e), Sackman

---

[1] The Municipal Land Use Law ("MLUL") defines "floor area ratio" as "the sum of the area of all floors of buildings or structures compared to the total area of land that is the subject of an application for development . . . ." N.J.S.A. 40:55D-4. "Under the [MLUL] . . . FAR is calculated by taking the sum of the area of all floors of buildings or structures in square feet and dividing by the total area of the site in square feet. N.J.S.A. 40:55D-4." Randolph Town Ctr. Assocs., L.P. v. Twp. of Randolph, 324 N.J. Super. 412, 414 (App. Div. 1999).

incorporated the EV parking spaces to avoid meeting the FAR requirement by alternatively supplying sufficient on-site parking.

In December, after conducting a hearing, the Borough rejected the concept plans as inconsistent with the Redevelopment Plan. The Borough's professional planner explained prospective redevelopers were not permitted to apply the EV statute at the concept plan stage, but even if they were, the concept plan exceeded the ten percent maximum credits allowed under N.J.S.A. 40:55D-66.20(f). In February 2022, Sackman submitted its fourth revised version of its concept plans, which reduced the number of residential units, included one affordable housing unit, and provided both traditional and EV on-site parking spaces. The Borough rejected the plans.

In March, Sackman submitted its last revised version of the plans, which reduced the number of residential units, eliminated the affordable housing unit, and provided for both traditional and EV on-site parking spaces. Again, the Borough rejected the plans. The Borough clerk advised Sackman that the plans were rejected because the project was too large, the planned parking did not comply with Borough ordinances, the use of angled street parking was not preferred by the mayor, and the plans did not account for trash and mechanical equipment locations which would risk further altering the parking plans.

5

Additionally, the Borough's professional planner explained the plan exceeded the FAR requirement, and Sackman was not entitled to use of the EV on-site parking exception. Sackman asked the Borough to specifically identify the sections of the Redevelopment Plan the concept plans did not comply with. In May, the Borough's counsel replied to Sackman echoing the reasoning of the Borough clerk.

In June, Sackman filed a complaint in lieu of prerogative writs seeking an order directing the Borough to "conduct the required hearing, applying the required objective standards set forth in both the [Redevelopment Plan] and applied [s]tate law, concerning [EV] credits in determining parking requirements for the development projects." Sackman also moved for summary judgment or, alternatively, for the matter to proceed summarily under Rule 4:67-2(b). The Borough filed a cross-motion to dismiss or, alternatively, for summary judgment.

On October 28, 2022, the trial court, by written decision and companion order, denied Sackman's motion for summary judgment and granted the Borough's cross-motion for summary judgment dismissing the action with prejudice. Following the principles set forth in Milford Mill 128, LLC v. Borough of Milford, 400 N.J. Super. 96, 110-11 (App. Div. 2008), the trial court found there was nothing improper about the Borough's consistency

determination.[2]  The trial court also found Sackman failed to comply with the FAR requirements, or the parking requirements set forth in the Redevelopment Plan.  The trial court further noted the EV credit did not apply, but even if it did, Sackman still exceeded the ten percent maximum credit allowed per site plan. The court concluded Sackman "failed to overcome the high threshold of arbitrary, capricious, and unreasonable conduct[.]"

## II.

Appellate courts review the trial court's grant or denial of a motion for summary judgment de novo, applying the standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  The court considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

---

[2]  In Milford Mill, we held that a municipality has the discretion to require plans submitted by potential developers go through an initial determination for consistency with the municipality's redevelopment plan before being submitted for review by the municipal planning board.  Id. at 110.  Once a plan is deemed consistent with the redevelopment plan, the governing body must follow section 13 of the LRHL, which requires redevelopment applications to be submitted to the municipal planning board for "review and approval in accordance with the requirements for review and approval of subdivisions and site plans as set forth by ordinance adopted pursuant to the [MLUL]."  N.J.S.A. 40A:12A-13.

An appellate court's review of rulings of law and issues regarding the applicability, validity (including constitutionality) or interpretation of laws, statutes, or rules is also de novo.  See In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020).  "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

If a judge makes a discretionary decision but acts under a misconception of the applicable law or misapplies it, the exercise of legal discretion lacks a foundation and it becomes an arbitrary act, not subject to the usual deference.  Summit Plaza Assocs. v. Kolta, 462 N.J. Super. 401, 409 (App. Div. 2020).  In such a case, the reviewing court must instead adjudicate the controversy in the light of the applicable law in order to avoid a manifest denial of justice.  State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010).

III.

Sackman contends the trial court's presumption that the Borough's consistency determinations were valid left a key issue unaddressed:  whether a redevelopment agency considering concept plans can apply EV credits when determining parking requirements at the concept plan consistency review phase.

Sackman argues that instead of interpreting the EV statute and its applicability to projects under redevelopment plans, the trial court erroneously adopted the Borough's interpretation of the EV statute.

Courts have yet to interpret the EV statute to determine when a prospective redeveloper may utilize the EV credit. "'When interpreting a statute, our main objective is to further the Legislature's intent.'" Rogow v. Bd. of Trs., 460 N.J. Super. 542, 553 (App. Div. 2019) (quoting In re Pontoriero, 439 N.J. Super. 24, 35 (App. Div. 2015)). To accomplish this, we begin by looking to the plain language of the statute. Ibid. (citing In re Kollman, 210 N.J. 557, 568 (2012)).

The EV statute specifies the conditions and timelines applicable for a preliminary site plan approval for applications involving multiple dwellings with a specified number of residential units, or multiple dwellings operating as a condominium or cooperative form of ownership, mutual housing, or mixed-use development. The operative language in N.J.S.A. 40:55D-66.20(a) states, "[a]s a condition of preliminary site plan approval, for each application involving . . . a mixed use development," a developer or owner shall prepare at least fifteen percent of a development plan's parking spaces as "Make-Ready," with at least one-third of those spaces including electric vehicle supply equipment. (emphasis added).

A-1102-22

Sackman argues the Borough's mischaracterization of the EV statute deprives prospective redevelopers of the full benefit of the EV credits in submitting concept plans for consistency reviews. It asserts a restriction on the use of EV credits in designing a concept plan would unfairly prohibit applicants from submitting plans that would otherwise be fully compliant with state law and local redevelopment plans. This is because the EV credits allow for the relevant parking and density requirements to be met without any need for deviation from a redevelopment plan or application of use or bulk variances.

The Borough argues Sackman was not entitled to application of the EV statute to their concept plan because the statute should only be applied at the time of preliminary site plan approval. The Borough reasons that because the consistency determination takes place before a review for preliminary site plan approval, they were not required to apply the EV statute to Sackman's concept plans any earlier. It further argues the EV statute does not permit the use of the EV credit to avoid compliance with the FAR requirements, and thus Sackman was required to first submit a plan compliant with the FAR requirements before applying the EV credit.

We interpret N.J.S.A. 40:55D-66.20(a)(1)'s "[a]s a condition of preliminary site plan approval . . . ." to permit prospective redevelopers to apply the statute in order to reach the preliminary site plan approval stage. Otherwise,

a plan that was consistent with a town's redevelopment plan would then be changed at the preliminary site plan approval, and the original compliance would no longer stand. This would lead to an absurd result because the final development would not match the redevelopment plan.

As is the case here, there are often many steps a prospective redeveloper must undertake before being considered for preliminary site plan approval on a redevelopment project. Our interpretation is bolstered because the EV statute does not explicitly restrict prospective redevelopers from relying on it in earlier redevelopment stages. If it did, the statute would not have used conditional language and instead would state it was inapplicable prior to preliminary site plan approval. Therefore, the Borough should have permitted Sackman to rely on the EV statute in drafting their concept plan.

IV.

N.J.S.A. 40:55D-66.20(f) states, "[a]ll parking space calculations for electric vehicle supply equipment and Make-Ready equipment pursuant to this section shall be rounded up to the next full parking space." Sackman and the Borough disagree as to when parking space calculations should be rounded up to the next full parking space.

According to Sackman's interpretation, when the EV credit is applied to the total number of calculated spaces and that number includes a decimal, the

calculation must be rounded up to the next whole parking spot so as to account for the partial space under the calculation. Conversely, the Borough asserts when a calculation of the EV credit results in a number with a decimal that is less than 0.5 and, thus, closer to the lesser number than the greater number, the calculation should be rounded down to the closer whole number.

Our courts have not yet interpreted N.J.S.A. 40:55D-66.20(f). Our statutory interpretation begins, as it must, with reading the plain language of the statute. See Grubb, 333 N.J. Super. at 597. "[T]he words chosen by the Legislature should be accorded their ordinary and accustomed meaning." State v. Hudson, 209 N.J. 513, 529 (2012). "Where the plain language of a statute is clear, we enforce the statute as written." Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

The Borough's interpretation misconstrues the plain meaning of N.J.S.A. 40:55D-66.20(f). The only condition this section of the statute provides is that when an EV credit calculation does not result in a whole number, the calculated number should be "rounded up to the next full parking space." N.J.S.A. 40:55D-66.20(f). The statute does not include any conditional language for a scenario where a calculation resulting in a decimal number should be rounded down. While the Borough is relying on the mathematical practice of rounding a number

down to the nearest whole number when a resulting decimal is anything less than 0.5, that is not what the plain meaning of the language in the EV statute provides.

V.

However, that is not where our discussion ends. Sackman and the Borough have different interpretations of the effect rounding up has as it applies to an EV parking space calculation that would exceed the ten percent maximum under N.J.S.A. 40:55D-66.20(e).

Applying the EV credit to Sackman's required eighty-four total parking spaces under the concept plan would afford Sackman 8.4 total EV parking spaces. The 8.4 EV credit calculation is then rounded up to nine, the next full parking space.

Yet, N.J.S.A. 40:55D-66.20(e) states:

> A parking space prepared with electric vehicle supply equipment or Make-Ready equipment pursuant to this section shall count as at least two parking spaces for the purpose of complying with a minimum parking space requirement. This subsection shall result in a reduction of no more than ten percent of the total required parking.

[(Emphasis added).]

Sackman contends, because the EV statute rounded up to the next full parking space, it permitted them to include nine EV spaces in their plan. However, the Borough posits Sackman's use of the nine EV credits

impermissibly reduces the total parking required by more than ten percent, and therefore violates N.J.S.A. 40:55D-66.20(f).

Here, the plan includes forty-two residential units and therefore has a "total required parking" number of eighty-four spaces. N.J.S.A. 40:55D-66.20(e). If Sackman builds sixty-eight traditional spaces and eight EV spaces, for a total of seventy-six spaces (and eighty-four spaces by double counting the eight EV spaces), then "total required parking" would be reduced by eight spaces (from eighty-four to seventy-six), or 9.5 percent. Ibid. This would comply with the statute because "total required parking" is reduced, but not by more than ten percent. Ibid.

This would also be the result if Sackman built seventy traditional and seven EV spaces for a total of seventy-seven actual spaces (eighty-four spaces by double counting EV spaces), seventy-two traditional and six EV spaces for a total of seventy-eight spaces, seventy-four traditional and five EV spaces for a total of seventy-nine spaces, and so on. However, if Sackman builds sixty-six traditional and nine EV spaces, for a total of seventy-five spaces (eighty-four spaces by double counting EV spaces), then "total required parking" is reduced by 10.7%, which violates N.J.S.A. 40:55D-66.20(e).

When submitting concept plans for a consistency determination with a municipality's redevelopment plan, the prospective redeveloper must comply

with all applicable sections of the MLUL. The EV statute does not provide any instruction as to the approach reviewing municipalities or courts should take when a rounding up of an EV credit would exceed the ten percent limitation. Absent such language, prospective redevelopers must create concept plans that avoid any conflict within the statute.

Sackman's reliance on N.J.S.A. 40:55D-66.20(f) would cause conflict with N.J.S.A. 40:55D-66.20(e), the more specific section. We do not find Sackman, or any prospective redeveloper, should be permitted to benefit from the provisions of a statute when doing so would clearly contradict another relevant provision. Sackman may not round up to the next full parking space when doing so would result in exceeding the ten percent credit maximum. As a result, since the EV credit would be rounded up to nine, Sackman's concept plan would not be consistent with the Redevelopment Plan. Therefore, the Borough and trial court were correct in rejecting the concept plan as inconsistent.

To the extent we have not addressed an argument raised by Sackman, it is because its lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1102-22

15