**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0705-23

66 KINDERKAMACK, LLC,

    Plaintiff-Appellant,

v.

BOROUGH OF ORADELL
ZONING BOARD OF
ADJUSTMENT,

    Defendant-Respondent.

_____

        Submitted January 13, 2025 – Decided May 5, 2025

        Before Judges Gummer, Berdote Byrne and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1399-23.

        O'Toole Scrivo, LLC, attorneys for appellant (Holly T. Schepisi and Nicholas P. Whittaker, of counsel and on the brief).

        Surenian, Edwards, Buzak & Nolan, LLC, attorneys for respondent (Edward J. Buzak, on the brief).

PER CURIAM

In 2021, plaintiff 66 Kinderkamack, LLC sought to build a mixed-use development on a privately-owned vacant half-acre parcel in Oradell. Toward this end, plaintiff applied to the Borough of Oradell Zoning Board of Adjustment ("Board") requesting certain variances. The Board rejected plaintiff's proposal, citing prohibitions against its residential component and other deficiencies. Plaintiff then submitted a modified application with fewer non-conforming conditions. The Board rejected plaintiff's modified application. In response, plaintiff filed a complaint in lieu of prerogative writs with the Law Division.

Following oral argument in September 2023, Judge Christine Farrington issued an order affirming the Board's decision, finding it was supported by ample evidence, and was not arbitrary, capricious, nor unreasonable. On appeal, plaintiff argues the trial court erred in upholding the Board's decision. Substantially for reasons contained in her ruling, we affirm the court's decision.

I.

In November 2021, plaintiff sought to build a mixed-use development consisting of residential, office, and retail spaces, on a vacant 25,515 sq. ft. parcel ("the property" or "the lot") in a B-3 Business and Apartment Zone District in Oradell. The permitted uses in the Borough's B-3 zones are limited to garden apartments and various uses permitted in B-1 zones, including

commercial buildings, government offices, retail stores, art studios, and efficiency apartments on other than the ground floor. Oradell, N.J., § 240-6.5(I)(1) to (2). The governing ordinance requires a minimum lot dimension of 150 feet, a front yard setback of 15 feet, and a side yard setback of 10 feet, as well as a maximum building coverage of 40% of the total lot area and a floor area ratio not to exceed 35%. § 240-6.5(I)(3).

Of the thirty-three residential units proposed, plaintiff designated five as "affordable." Plaintiff's application included a use variance and multiple bulk variances to construct a building with non-conforming conditions.

On April 18, 2022, the Board denied plaintiff's application and adopted a memorializing resolution. The resolution stated that the residential component of plaintiff's proposal was not permitted in the Borough's B-3 zone, reasoning that the proposed residential use was not inherently beneficial. The Board also found the project failed to comply with the permitted floor area ratio (FAR), combined side-yard setback, building height, building coverage, and generator location requirements of the B-3 zone. More generally, the Board noted the Borough's population growth of 0.4% between 2000 and 2014, and that the Borough's most recent master plan from 2018 did not allow for modification or amendment of the zoning restrictions for B-3 zones pertaining to garden and

efficiency apartments.

In June 2022, plaintiff submitted a modified application, seeking fewer non-conforming conditions with a focus on subsection (d)(1) use variance and (d)(4) FAR variance, and multiple (c) bulk variances. In a hearing spanning five days, plaintiff presented the testimony of one of its owners, an architecture expert, a civil- and environmental-engineering expert, a traffic-engineering expert, and a professional planner. The Board's engineer and planner testified. In a 4-3 vote, the Board denied the second application. In its resolution dated December 19, 2022, the Board acknowledged the decrease in residential units from the initial application but found that decrease insufficient, with plaintiff still having five times the FAR permitted in the district, rendering it "too great in mass" and "too large for the property." Regarding the (c) variance, the Board determined that plaintiff failed to demonstrate exceptional property conditions or topography that would justify the grant of relief and that plaintiff's desire to build too large a structure was "self-created." The Board also stated that the affordable housing element of the application did not make the project beneficial. Finally, the Board found the development was unsuitable and that granting the (d)(1) variance would substantially impair the intent and purpose of the zoning plan.

A-0705-23

In March 2023, plaintiff filed a complaint in lieu of prerogative writs with the trial court, contending the Board's denial of the second proposal to be arbitrary, capricious, or unreasonable. Following oral argument on defendant's motion to dismiss, Judge Farrington issued a decision in September 2023 finding the Board's denial not to have been arbitrary, capricious, nor unreasonable, dismissing the complaint. The court found that the decision to deny the (d)(1) variance was supported by the 2018 master plan and its intent to preserve the character of the neighborhood. The court also determined the Board's calculation of FAR to be in accordance with the plain language of the ordinance. Denial of the (d)(4) variance was also found to be supported by the 2018 master plan and the fact that plaintiff's proposed 65.1% building coverage constituted a drastic increase from the maximum permitted 40%. Finally, the court determined that plaintiff's failure to demonstrate exceptional property conditions or topography justified the Board's denial of the remaining requested variances.

## II.

On appeal, plaintiff argues the trial court erred in affirming the Board's determination because plaintiff carried its burden in establishing the criteria for the (d)(1) and (d)(4) variances. "When reviewing a trial court's decision

A-0705-23

regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adj. of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "We give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Ibid. "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant or denial of a variance are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013). Thus, "[t]he crucial question for our review is 'whether the board followed the statutory guidelines and properly exercised its discretion.'" Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, 424 N.J. Super. 501, 508 (App. Div. 2012) (quoting Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001)).

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 -136, is "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development 'in a manner which will promote the public health, safety,

morals and general welfare' using uniform and efficient procedures." Rumson

Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 349

(2003) (quoting Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 178

(1980)). Pertinently, a board of adjustment may "[i]n particular cases for special

reasons, grant a variance to allow departure from regulations . . . to permit: (1)

a use or principal structure in a district restricted against such use or principal

structure . . . [or] (4) an increase in the permitted floor area ratio." N.J.S.A.

40:55D-70(d)(1) and (4). Nonetheless, a board may only grant the variance if

the applicant proves that "such variance or other relief can be granted without

substantial detriment to the public good and will not substantially impair the

intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-

70. Accordingly, an applicant for a (d) variance must establish (1) special

reasons for the grant of the variance ("positive criteria"); and (2) proof that the

variance will impair neither the public good nor the zoning plan ("negative

criteria"). Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 138

N.J. 285, 299 (1994).

Our courts have recognized three instances constituting a "special reason"

for a use variance:

> (1) where the proposed use inherently serves the public
> good, such as a school, hospital or public housing

7

facility, see Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 159-60 (1992); (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone, see Medici v. BPR Co., 107 N.J. 1, 17 n. 9 (1987); and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use." Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998) (quoting Medici, 107 N.J. at 4).

[Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006) (citations reformatted).]

(D)(1) Variance

Plaintiff maintains the Board "ignored the greater weight of the evidence in the record that supported a grant." Specifically, plaintiff contends its "unopposed expert testimony" demonstrated the proposed site suitable for the proposed use, thereby carrying its burden pertaining to the (d)(1) variance. Plaintiff further contends its proposal advanced the purposes of MLUL by promoting the public health and welfare of the community, securing affordable housing, and providing adequate housing spaces.

In considering plaintiff's arguments, we observe that a zoning board of adjustment "has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal." Kramer v. Bd.

of Adjustment, 45 N.J. 268, 288 (1965) (quoting Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div.), certif. denied, 32 N.J. 347 (1960)).

A site is particularly suitable for a proposed use when (1) "the use is one that would fill a need in the general community," (2) "there is no other viable location," or (3) "the property itself is particularly well fitted for the use either in terms of its location, topography or shape." Funeral Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 210 (App. Div. 1999). A use that is not inherently beneficial must satisfy "an enhanced quality of proof" that requires "clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Medici, 107 N.J. at 4. Such proof may entail a substantial change in the character of the community. Id. at 21.

Having carefully considered the record, we conclude the Board considered the testimony presented by plaintiff's experts and reasonably determined that plaintiff did not meet its burden in demonstrating that the lot is particularly suited to the proposed use. In its extensive analysis of the (d)(1) application, the Board noted:

> During the public hearings, no contention was advanced by the applicant that the character of the surrounding neighborhood has changed since the 2018 Master Plan and since the Zoning Ordinance was last

revised, factors which may justify the granting of relief . . . . [N]either the character of the Borough generally, nor the neighborhood proximate to the property, has changed in any substantial manner since the last revisions of the Master Plan and Ordinance. This conclusion is confirmed by the 2018 Land Use & Central Business District Elements of the Master Plan ("2018 Plan") which notes that the Borough's population growth has been 33 persons, or 0.4%, between 2000 and 2014 and that a net growth of eleven (11) dwelling units occurred between 2000 and 2015. The 2018 Plan notes that the Borough's population has remained relatively static since the 1990's. It should also be noted that the 2018 Plan discussed rezoning certain areas of the Borough, but the property and neighboring area were not proposed for any rezoning.

[(internal citations omitted).]

Plaintiff also maintains it "presented insurmountable evidence to show that the application was inherently beneficial." However, the designation of less than 20% of residential units for affordable housing is not inherently beneficial, as the predominant purpose of the project is to build market-rate units and not affordable units. See Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 256 (2013) ("[T]he addition of affordable units to a proposed development in which most of the proposed units are market-rate housing does not make the entire project inherently beneficial."). Accordingly, "the inclusion of affordable housing as a relatively small component of a much larger residential development [does not] transform[] the

10

entire project into an inherently beneficial use for purposes of obtaining a (d)(1) variance." Id. at 258.

Although plaintiff's proposal may generally serve the purposes of MLUL, a use variance may not be granted if the application does not satisfy both the positive and negative criteria. While we acknowledge plaintiff's effort in allocating units for low-income families, we note that the grant of a use variance triggers a mandatory set-aside for affordable housing. Oradell, N.J., § 240-9:13(B)(1). Compliance with the mandatory set-aside requirement does not automatically entitle a plaintiff to a use variance or any other proposed project. See § 240-9:13(B)(4). Thus, the Board did not abuse its discretion in denying plaintiff's (d)(1) variance.

(D)(4) variance

Plaintiff maintains the Board's denial of the (d)(4) variance, and the trial court's review, were based on "undue inferences regarding [p]laintiff's ulterior motives" and "mere speculation." Specifically, plaintiff maintains it met its burden since the proposed development was not too large or intense, was aesthetically pleasing, and was justified considering the remediation cost.

We first address whether the Board's calculation of the FAR was in accordance with law. Plaintiff maintains the FAR is 1.42, as opposed to 1.77,

reasoning that the ground-level parking located in an open area should not be included in the calculation. We review de novo the plain language of the MLUL and Oradell's land development regulations. Mountain Hill, L.L.C. v. Zoning Bd. of Adjustment of Middletown, 403 N.J. Super. 210, 234-35 (App. Div. 2008). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Id. at 235 (internal citations omitted). N.J.S.A. 40:55D-4 defines FAR as "the sum of the area of all floors of buildings or structures compared to the total area of the land." The Borough defines FAR as "[t]he sum of the gross horizontal area of all stories above grade, except the basement floor of residential buildings or structures, compared to the total area of the site" which includes "[d]etached garages and accessory buildings [only if] the structure is located in a side yard, front yard or in a rear yard and is closer than 20 feet to the farthest rear line of the principal building on the site." Oradell, N.J., § 240-2.2. A review of the record reveals that the detached ground-level parking should be included in the FAR calculation. Accordingly, the Board's FAR calculation of 1.77 is accurate.

Unlike (d)(1) variances which concern excluded uses, (d)(4) variances concern uses permitted in the zone. Randolph Town Ctr. Assoc., L.P. v.

12

Township. of Randolph, 324 N.J. Super. 412, 416 (App. Div. 1999). Thus, with regard to establishing the positive criteria of a (d)(4) variance, an applicant "need not show that the site is particularly suited for more intensive development" but rather "that the site will accommodate the problems associated with a proposed use with larger floor area than permitted by the ordinance." Id. at 416-17.

The maximum FAR permitted in the B-3 Zone is 0.35. Oradell, N.J., § 240-6.5(I)(3)(e). While we agree that plaintiff's proposal abstractly furthers the MLUL purpose of "promot[ing] a desirable visual environment," aesthetic considerations alone "rarely justify a variance for a new nonconforming use." Grasso v. Borough of Spring Lake Heights, 375 N.J. Super. 41, 49 (App. Div. 2004) (citing Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 392 (1990)). As the Board fairly determined, "[a]esthetics alone cannot prevail over a FAR five times greater than that permitted in the [z]one and other proposed nonconforming conditions which characterize the development proposal."

In concluding that the proposal will not accommodate the problems associated with a larger-than-permitted FAR, the Board reviewed the record and provided sufficient and valid reasons, including: (1) the development is too massive for a one-half acre lot; (2) the need for (c) variances indicates the

proposal is too large for the lot; (3) environmental remediation of the lot and surrounding properties can be achieved with a development of a smaller size; (4) the proposal contravenes the 2018 master plan goal of constraining residential developments to areas specified in the plan; (5) the proposal contravenes the master plan goal of providing buffer zones to separate incompatible land uses; and (6) the FAR variance is dramatically higher than any other proposal in the last decade.

And as Judge Farrington aptly noted:

> The Board found there was no demonstration of any exceptional property conditions or topography or other exceptional circumstance that would justify the finding of hardship and that if there was hardship it was caused by the applicant and its proposal for a building too large for the property. The Board further rejected the applicants' proposed bases for promotion of the goals of the MLUL and the court finds there is sufficient basis in the record to support those findings.
>
> . . .
>
> Further, the record is devoid of evidence that the remediation of the property could not be accomplished without the (D) variances.

Upon review of the reasons given in the Board's resolution for its decision to deny the requested variances, we agree with the court that the Board's decision was amply supported by the evidence. There is no basis on which to conclude

14

that the Board's decision was arbitrary, capricious, nor unreasonable. <u>Jacoby</u>, 442 N.J. Super. at 462.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0705-23